IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CR-10-1H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| MARCIO SANTOS-PORTILLO, ) | **RECOMMENDATION** |
| ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #22], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government has responded in opposition to the motion to suppress [DE #23] to which Defendant has replied [DE #26]. The Government filed a surreply in opposition [DE #30] and the time for further filings has expired. On May 2, 2018, an evidentiary hearing was held before the undersigned at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is ripe for decision.

STATEMENT OF THE CASE

On January 30, 2018, a federal grand jury returned a one-count indictment charging Marcio Santos-Portillo ("Santos-Portillo") with illegal reentry into the United States of an alien removed subsequent to a felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1). On March 7, 2018, Santos-Portillo filed a motion to suppress. He contends that his warrantless arrest by immigration agents on January

16, 2018, violated 8 U.S.C. § 1357 and his Fourth Amendment right against unreasonable warrantless seizures. Santos-Portillo demands that any evidence obtained after the January 16, 2018, arrest be suppressed.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Santos-Portillo's motion, the court heard the testimony of Special Agent Thomas Swivel ("Agent Swivel") for the Government. Santos-Portillo presented the testimony of his wife, Bobbie Overbey-Santos ("Overbey-Santos"), and his brother-in-law, Timothy Bannister ("Bannister"). The undersigned makes the following findings of fact based upon this testimony and the exhibits admitted into evidence.

Agent Swivel is a Special Agent of Homeland Security Investigations ("HSI") in Wilmington, North Carolina, where he has been employed for approximately sixteen years. (Hr'g Tr. [DE #36] 9.) He previously worked as a Border Patrol Agent and a Customs Special Agent in Arizona and has served a total of twenty-one years in law enforcement. (Hr'g Tr. 9–10.) As a Special Agent, he is charged with enforcing customs and immigration laws as well as investigations under other federal criminal codes. (Hr'g Tr. 10.)

On January 9, 2018, Agent Swivel observed Santos-Portillo at a business in Wilmington, North Carolina, and thought he recognized him as a person he had previously encountered criminally. (Hr'g Tr. 11.) Based upon motor vehicle records, Agent Swivel determined Santos-Portillo was not the person previously encountered

and that the vehicle Santos-Portillo had entered was registered to Overbey-Santos and Santos-Portillo, with an associated Wilmington address. (Hr'g Tr. 11-12.)

Agent Swivel then ran Santos-Portillo's name through an immigration database and found that Santos-Portillo had an alien registration number and had possibly been deported previously. (Hr'g Tr. 12.) Agent Swivel identified Santos-Portillo based on photographs in the database and further requested access to Santos-Portillo's alien file. (Hr'g Tr. 13.) From the alien file, Agent Swivel obtained copies of a 2011 immigration order [DE #23-3] directing that Santos-Portillo be removed from the United States and a 2010 judgment from Harris County, Texas, evidencing Santos-Portillo's conviction for felony evading arrest with a vehicle. (Hr'g Tr. 13–14.) The alien file also included a Form I-200 Warrant for Arrest of Alien [DE #23-3] and a Form I-205 Warrant for Removal/Deportation [DE #23-4], pursuant to which Santos-Portillo was removed from Houston, Texas, to Honduras on March 21, 2011. (Hr'g Tr. 14.) Agent Swivel confirmed that Santos-Portillo had not requested permission to reapply for admission into the United States. (Hr'g Tr. 14.)

The alien file also included pictures of Santos-Portillo from 2011 related to his prior felony conviction. (Hr'g Tr. 15.) Based upon the age of these pictures and on his experience that people's appearances change over time, Agent Swivel wanted to confirm the identity of Santos-Portillo. (Hr'g Tr. 15.)

On January 11, 2018, Agent Swivel continued his investigation by conducting a surveillance of Santos-Portillo's vehicle at the Wilmington address listed on the vehicle registration. Agent Swivel did not approach or alert Santos-Portillo of his

3

presence. (Hr'g Tr. 17.) Following this surveillance, Agent Swivel discussed with his supervisor and other officers a plan to conduct further surveillance of Santos-Portillo. (Hr'g Tr. 41–42.)

On January 16, 2018 around 6 a.m., Agent Swivel and four other agents established surveillance of Santos-Portillo's residence. (Hr'g Tr. 17–18.) Agent Swivel, HSI Special Agent Charles Kitchin, and HSI Special Agent Richard Davies were parked in a white minivan at a laundromat parking lot adjacent to Santos-Portillo's residence (Hr'g Tr. 34, 38.) HSI Special Agent Richard Everhardt and North Carolina Department of Motor Vehicles License and Theft Officer Brian Guille were parked in a Jeep Cherokee across the street in a parking lot. (Hr'g Tr. 34, 38.) When Santos-Portillo exited his residence and started his vehicle, Agent Swivel approached Santos-Portillo and identified himself as a special agent with Homeland Security. (Hr'g Tr. 19–20.) Upon Agent Swivel's approach, the officers across the street pulled in diagonally behind Santos-Portillo's Tahoe and Overbey-Santos' Chevrolet Suburban. (Hr'g Tr. 39–40, 57, 70–71.) This law enforcement vehicle was half in the dirt area of the driveway and the back-end was in the concrete area of the adjacent laundromat parking lot. (Hr'g Tr. 64.) Agent Swivel's white minivan was still parked in the adjacent asphalt parking lot facing the entrance of the laundromat. (Hr'g Tr. 18, 40, 65.) Santos-Portillo stood outside of his vehicle with the driver's door open as Agent Swivel asked him his name and where he had been born. (Hr'g Tr. 20.) Santos-Portillo responded that his name is Marcio Santos-Portillo and that he was from

4

Honduras. (*Id.*) Agent Swivel then detained Santos-Portillo for illegal reentry of an alien . (*Id.*)

Bannister, who was staying at Santos-Portillo's residence, went inside the residence to notify his sister, Overbey-Santos, of Santos-Portillo's arrest. (Hr'g Tr. 54–55, 58.) Because Santos-Portillo was wearing flip-flops, one of the agents requested that Bannister have Overbey-Santos bring Santos-Portillo's shoes. (Hr'g Tr. 58–59, 66–67.) Santos-Portillo was handcuffed and taken to the white van in the adjacent laundromat parking lot. (Hr'g Tr. 59, 66.) Overbey-Santos went inside the residence to look for documents showing that Santos-Portillo had filed for citizenship. (Hr'g Tr. 59.)

Santos-Portillo was transported to the Wilmington Immigration and Customs Enforcement ("ICE") office where his fingerprints were taken. (Hr'g Tr. 22–23, 43.) Agent Swivel submitted the fingerprints to several databases, including FBI and immigration databases. (Hr'g Tr. 23, 43.) The databases reported that Santos-Portillo had been previously deported. (Hr'g Tr. 23.) Agent Swivel read Santos-Portillo his *Miranda* rights in Spanish, which he waived in writing. (Hr'g Tr. 23, 44.) Agent Swivel interviewed Santos-Portillo, asking his name, date of birth, and place of birth. (Hr'g Tr. 23.) Santos-Portillo admitted that he had been previously deported and did not have any immigration documents allowing him to be in the United States legally. (Hr'g Tr. 24.) Following the interview, Agent Swivel contacted the U.S. Attorney's office for prosecution. (Hr'g Tr. 44–45.) Agent Swivel swore out a criminal complaint the following day, and a criminal arrest warrant was issued. ([DE #1, 2], Hr'g Tr. 45.)

5

# DISCUSSION

## I. Warrantless Arrest Authority

Santos-Portillo argues that his arrest on January 16, 2018, violated the warrantless arrest requirements of 8 U.S.C. § 1357 and constituted an unreasonable seizure of his person in violation of the Fourth Amendment. (Def.'s Mem. Mot. Suppress [DE #22] at 3.) The Government counters that the immigration officers lawfully effected an administrative arrest of Santos-Portillo based on the 2011 order of removal and, alternatively, that they had probable cause to believe Santos-Portillo had committed a felony offense. (Govt's Resp. Mot. Suppress [DE #34] at 3.)

Title 8 U.S.C. § 1357 authorizes an immigration officer to administratively

> arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Thus, the two requirements for administrative arrests are (1) the officer must have "reason to believe" the alien is in the United States in violation of the immigration laws or related regulations and (2) the alien is "likely to escape" before a warrant can be obtained. *See id.*

The statute also authorizes an immigration officer to criminally arrest an individual without a warrant for

> felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(4). The two requirements for criminal arrests are (1) the officer must have "reason to believe" the person committed a felony violation of the immigration laws; and (2) the "likelihood" of the person escaping before a warrant can be obtained. *See id*.

In *United States v. Segura-Gomez*, No. 4:17-CR-65-FL-1, 2018 WL 6582823 (E.D.N.C. May 25, 2018), the court explained "that the phrase 'reason to believe' in § 1357 is equivalent to constitutionally required probable cause." No. 4:17-CR-65-FL-1, 2018 WL 6582823, at *6 (citing *Morales v. Chadborne*, 793 F.3d 208, 216 (1st Cir. 2015)), *mem. & recomm. adopted*, 2018 WL 6259222 (E.D.N.C. Nov. 30, 2018). "Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Id*. (alteration in original) (quoting *Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 2015)).

The court in *Segura-Gomez* also found the second prong of "likely to escape" under 8 U.S.C. § 1357(a)(2) and "likelihood of the person escaping" under 8 U.S.C. § 1357(a)(4) to be met where the immigration officer "has reason to believe that the person is likely to escape." *Segura-Gomez*, 2018 WL 6582823, at *6 (citing 8 C.F.R. § 287.8(c)(2)(ii)).) The government has the burden to show that the "escape-likelihood

7

prong is met—that is, that the agents had reason to believe that defendant was likely to escape before a warrant could be obtained." *Id.* at *7.

The facts and circumstances presented here establish that Agent Swivel had probable cause to believe that Santos-Portillo was in the United States in violation of 8 U.S.C. § 1326. Section 1326(a) provides in pertinent part:

[A]ny alien who–

>   (1)  has been . . . deported, or removed . . . and thereafter
> 
>   (2)  enters, attempts to enter, or is at any time found in, the United States[ ] [without the advance consent of the United States Attorney General] . . . unless . . . he was not required to obtain such advance consent under [the immigration laws],

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a). And where the alien's removal has been "subsequent to a conviction for commission of" a felony or aggravated felony, the maximum term of imprisonment increases to ten years or twenty years, respectively. *See* 8 U.S.C. § 1326(b)(1), (2).

Agent Swivel observed Santos-Portillo in Wilmington, North Carolina, on January 9, 2018, and upon searching several databases, had reason to believe Santos-Portillo was present in the United States illegally. Agent Swivel reviewed the alien file, which included a photograph of Santos-Portillo, and from that was able to identify him. The alien file also verified that Santos-Portillo had been deported in 2011 and had been convicted of felony evading arrest with a motor vehicle in Harris

8

County, Texas, prior to his removal. These facts and circumstances would warrant a reasonable officer to believe that Santos-Portillo was present in the United States in violation of 8 U.S.C. § 1326 and subject to enhanced penalties under 8 U.S.C. § 1326(b)(1). Therefore, Agent Swivel had probable cause to arrest Santos-Portillo either administratively under § 1357(a)(2) or criminally under § 1357(a)(4).

The second prong of § 1357 – that agents had reason to believe Santos-Portillo was likely to escape before a warrant could be obtained – has not been satisfied, however. Where agents "did not deem [defendant] an escape risk at that point sufficient to arrest him" and the defendant did not manifest an intent to escape, this court has held that a court lunch break was sufficiently long for agents to obtain a warrant. *Segura-Gomez*, 2018 WL 6582823, at *7. The court reasoned that the Government failed to meet its burden of showing that agents could not obtain a warrant without the defendant likely escaping. *Id.* "At least in terms of the number of different types of officials who can issue warrants – over 50 – acquisition of a warrant does not appear to be a daunting task." *Id.* at *8 (citing 8 C.F.R. § 287.5(e)(2)).

Here, Agent Swivel first encountered Santos-Portillo on January 9, 2018, outside a business in Wilmington, North Carolina. Santos-Portillo was not approached and arrested until January 16, 2018. Between January 9 and 11, 2018, agents reviewed Santos-Portillo's alien file, verified he had been deported on one prior occasion, learned of a prior conviction of felony evading arrest, and surveilled his house. Agent Swivel testified that he discussed with his supervisor and other agents his investigation plans on January 15, 2018, the day prior to Santos-Portillo's arrest.

9

During this time period, as in *Segura-Gomez*, there is no indication that "defendant had any awareness that the agents were surveilling him prior to their speaking with him." *Id.* at *7. There is no evidence that the agents had prior dealings with Santos-Portillo that would enable him to identify the agents. Just as a lunch break was sufficient time to obtain an arrest warrant in *Segura-Gomez*, the span of several days was a sufficient period of time for agents to observe Santos-Portillo and acquire a warrant. The Government has failed to show that the time period was too short to enable agents to obtain a warrant without Santos-Portillo escaping.

The court rejects the Government's argument that Santos-Portillo was subject to warrantless arrest based upon the 2011 order of removal. Where a removed alien reenters the United States illegally, the prior "removal order is not a surrogate for an arrest warrant." *Segura-Gomez,* 2018 WL 6582823, at *8 (finding that a removal order lacks the character of an arrest warrant). Courts instead apply the requirements for a warrantless arrest set out in § 1357. *See Segura-Gomez*, 2018 WL 6582823, at *9* (citing *United States v. Encarnacion*, 239 F.3d. 395, 398–99 (1st Cir. 2001); *United States v. Ravelo-Rodriguez*, No. 3:11-CR-70, 2012 WL 1597390, at *1, 12–16 (E.D. Tenn. Mar. 12, 2012)). To permit agents to rely on the removal order as an arrest warrant would eliminate the evaluation by "a neutral and detached judicial officer" demanded by our Fourth Amendment jurisprudence. *See Illinois v. Gates*, 462 U.S. 213, 240 (1983) ("The essential protection of the warrant requirement of the Fourth Amendment . . . is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of

10

being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" (alteration in original) (quoting *Johnson v. United States*, 333 U.S. 10 (1948)).); *Segura-Gomez*, 2018 WL 6582823, at *9.

Santos-Portillo points out that regulations promulgated by the Department of Homeland Security also support the need for a warrant absent a likelihood of escape. Title 8 of the Code of Federal Regulations § 287.8 provides "standards for enforcement activities . . . [that] must be adhered to by every immigration officer involved in enforcement activities." 8 C.F.R. § 278.8. Among those standards is subsection (c), which mandates that a "warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 278.8(c).

In a surreply filed without leave of court, the Government cites 19 U.S.C. § 1589a to argue that HSI special agents also "enjoy Title 19 authority as customs officers" to make warrantless arrests even absent likelihood of escape. Given the tardiness of the Government's argument, the court should decline to consider the argument. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (concluding that argument raised in reply brief "comes far too late in the day").

Moreover, the Government has not shown that § 1589a is as broad as it claims. Section 1589a provides, in its entirety, as follows:

> Subject to the direction of the Secretary of the Treasury, an officer of the customs may—
>
> (1) carry a firearm;

11

>    (2) execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States;
>
>    (3) make an arrest without a warrant for any offense against the United States committed in the officer's presence or for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony; and
>
>    (4) perform any other law enforcement duty that the Secretary of the Treasury may designate.

19 U.S.C. § 1589a. Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, certain functions of the United States Customs Service were transferred from the Secretary of the Treasury to the Secretary of Homeland Security. Notwithstanding the statute's introductory clause – "subject to the direction of the Secretary" – which limits the warrantless arrest authority of customs officers, the Government asserts that § 1589a vests customs officers with arrest authority above and beyond that provided by 8 C.F.R. § 278.8. The Government provides no caselaw or regulatory authority for its position, and the undersigned declines to read the statute so broadly.

## II.   Exclusionary Rule

Since the Government has failed to show that the escape-likelihood prong of § 1357(a)(2) and (4) was met, the court determines that the agents violated 8 U.S.C. § 1357 by failing to obtain a warrant prior to arresting Santos-Portillo. Therefore, the court must determine whether evidence seized as a result of Santos-Portillo's arrest should be suppressed.

12

The exclusionary rule allows for the suppression of evidence seized as fruits of constitutional violations. *United States v. Doyle*, 650 F.3d 460, 466–67 (4th Cir. 2011). "There is no exclusionary rule generally applicable to statutory violations." *United States v. Segura-Gomez*, No. 4:17-CV-65-1FL, 2018 WL 6259222, at *4 (quoting *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011)). Suppression of evidence "is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure." *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348–49 (2006)). Section 1357 does not expressly provide for suppression of evidence obtained by an officer who has exceeded the scope of his statutory authority. *Segura-Gomez,* 2018 WL 6259222, at *5. In determining whether to suppress evidence obtained in violation of § 1357, courts must therefore look to the reasonableness of the arrest under the Fourth Amendment. *Id.*

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures of "their persons, houses, papers, and effects." U.S. CONST. amend. IV. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). The Fourth Amendment is generally not implicated in a consensual police-citizen encounter where law enforcement officers approach someone in a public place and ask him a

13

few questions. *United States v. Holland,* 749 F. App'x 162, 164 (4th Cir. 2018) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Moreover, a warrantless arrest of an individual in a public place is consistent with the Fourth Amendment if supported by probable cause to believe a felony has been committed by the arrestee. *United States v. Watson*, 423 U.S. 411, 423-24 (1976). However, "absent another exception such as exigent circumstances, officers may not enter a home to make an arrest without a warrant, even when they have probable cause." *Collins v. Virginia*, 138 S. Ct. 1663, 1672 (2018) (quoting *Payton v. New York*, 445 U.S. 573, 587–590 (1980)). "That is because being 'arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home.'" *Id.* at 1672.

The Fourth Amendment also considers a home's curtilage—"the area 'immediately surrounding and associated with the home'—to be 'part of home itself for Fourth Amendment purposes." *Collins,* 138 S. Ct.. at 1670 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). However, a front yard that is not surrounded by physical barriers, such as a fence, or marked off by signs, such as "No Trespassing" or "Private Property," lacks the reasonable expectation of privacy needed to trigger Fourth Amendment protection. *United States v. Locklear*, No. 7:11-CR-67-F, 2012 WL 88113, at *3 (E.D.N.C. Jan. 11, 2012), *aff'd*, 514 F. App'x 315 (4th Cir. 2013) ("A front yard and the front porch was as open to the police officer as to any delivery person, guest, other members of the neighborhood, or the general public."). "What a person knowingly exposes to the public, even in his own home . . . , is not a subject of Fourth Amendment protection." *Locklear*, 2012 WL 88113, at *2 (quoting *California*

14

v. *Ciraolo*, 476 U.S. 207, 213 (1986)). Thus, a defendant who stands in the doorway of her house, "exposed to the public view, speech, hearing, and touch as if she had been standing completely outside her house" is not entitled to Fourth Amendment protection. *United States v. Santana*, 427 U.S. 38, 42 (1976). "[Defendant] was not merely visible to the public but was as" *Id.*

Here, on January 16, 2018, Agent Swivel surveilled Santos-Portillo's home from a nearby laundromat parking lot. From the parking lot, Agent Swivel observed Santos-Portillo voluntarily leave his home and head to his car, which was parked in the front yard. Santos-Portillo had started his car and was standing outside the vehicle as Agent Swivel approached him. The front yard of Santos-Portillo's home included no physical barriers shielding him from public view. Nor were there any "no trespassing" or "private property" signs suggesting a reasonable expectation of privacy in the front yard area. Upon exiting his residence, Santos-Portillo voluntarily exposed himself to public view; and his arrest, based upon probable cause to believe his presence in the United States violated 8 U.S.C. § 1326, was consistent with the Fourth Amendment. Accordingly, Santos-Portillo's motion to suppress should be denied.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #22] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have

15

until **June 14, 2019**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. Dec. 2017).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 31st day of May 2019.

_____
KIMBERLY A. SWANK
United States Magistrate Judge